Filed 11/4/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| STEVE POOLE et al., | |
| Plaintiffs and Appellants, | G047691, G047850, |
| v. | (Super. Ct. No. 30-2011-00463651) |
| ORANGE COUNTY FIRE AUTHORITY, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Geoffrey T. Glass, Judge. Reversed and remanded.

Silver, Hadden, Silver, Wexler & Levine and Richard A. Levine for Plaintiffs and Appellants.

Haight Brown & Bonesteel, Jules S. Zeman, Kevin M. Osterberg and Blythe Golay for Defendant and Respondent.

\*        \*        \*

The FireFighters Procedural Bill of Rights (FFBOR) provides: "A firefighter shall not have any comment adverse to his or her interest entered in his or her personnel file, *or any other file used for any personnel purposes* by his or her employer, without the firefighter having first read and signed the instrument containing the adverse comment indicating he or she is aware of the comment. . . ." (Gov. Code, § 3255, italics added; all undesignated statutory references are to the Government Code unless otherwise stated.) Steve Poole is a firefighter with the Orange County Fire Authority (OCFA) and a member of the Orange County Professional Firefighters Association, an employee organization for firefighters, fire apparatus engineers, and fire captains. Although OCFA's official personnel files are kept in Irvine, at OCFA's headquarters, Poole's fire captain kept a separate file at the fire station on each of the firefighters he supervised. The captain maintained in those files what he characterized as daily logs documenting the activities of the firefighters. The files were kept solely for a personnel purpose; for the captain's use in preparing yearly evaluations (or evaluations required by a performance improvement plan).

Poole did not know about any adverse comments in the file maintained by the captain until the captain gave him his yearly evaluation. Even then, not all the adverse comments in the daily logs were included in Poole's evaluation. The daily logs themselves were not seen by Poole until a representative from his employee organization demanded them. When Poole requested all adverse comments be deleted from the daily logs pursuant to section 3256.5, subdivision (c),[1] OCFA refused, claiming the daily logs

---

[1] "If, after examination of the firefighter's personnel file, the firefighter believes that any portion of the material is mistakenly or unlawfully placed in the file, the firefighter may request, in writing, that the mistaken or unlawful portion be corrected or deleted. Any request made pursuant to this subdivision shall include a statement by the firefighter describing the corrections or deletions from the personnel file requested and the reasons supporting those corrections or deletions. A statement submitted pursuant to this subdivision shall become part of the personnel file of the firefighter." (§ 3256.5, subd. (c).)

2

were not subject to FFBOR, in part because "while the notes *were intended to be used for personnel purposes*, they were never 'entered' into any file." (Italics added.)

The issue presented in this appeal is whether the files containing the daily logs are within the ambit of section 3255. Likely many supervisors keep some sort of notes to prepare accurate annual employee reviews, but most supervisors are not operating under a statutory scheme similar to the one we have here, which requires that no adverse comment be entered in to any file used for personnel purposes "without the firefighter having first read and signed the instrument." Here OCFA admits the daily logs were intended to be used for personnel purposes. Because the daily logs on firefighters are used for personnel purposes, we conclude they are subject to provisions of FFBOR. We therefore reverse the judgment entered in favor OCFA and remand the matter to the superior court for further proceedings consistent with this decision.

I

FACTS

Since becoming a fire captain, Brett Culp has made handwritten and computerized notes, referred to by the parties throughout these proceedings as daily logs, on the performance of each of the employees he supervised. Culp included in his daily logs "[a]ny factual occurrence or occurrences that would aid . . . in writing a thorough and fair annual review." The logs document the efficiency of the firefighters under Culp's supervision, including whether firefighters complied with instructions and adhered to rules. Culp kept the electronic entries on a flash drive containing a separate file on each employee he supervised. He also maintained a hard copy in a manila folder he kept in his desk with the employee's name on it.

Poole has been a firefighter with OCFA since 1984. Culp supervised Poole from December 2008 to October 2010 at station No. 46 and prepared an OCFA performance evaluation on Poole for the period of September 28, 2008, to September 28,

3

2009. He gave Poole an overall rating of substandard. Specifically, Culp found Poole's work habits, personal relations, adaptability, and progress were unsatisfactory. Poole was subsequently placed on a performance improvement plan. Prior to imposition of the performance improvement plan, Culp told his superior, Battalion Chief Dave Phillips, of the contents of the file he kept on Poole. Culp notified Phillips because he felt the daily logs contained incidents indicating concern and Phillips should know about them. In all, Culp prepared two annual reviews and three evaluations of Poole's progress on the performance improvement plan.

After he received his first substandard evaluation, Poole went to see Bob James, his representative with Orange County Professional Firefighters Association. James noted the specific details in the evaluation and asked Poole whether Culp had a file on him. Poole said he did not know of any.

On August 9, 2010, James appeared at station No. 46 and demanded Poole's "station file." Culp gave James the daily logs he kept on Poole. The daily logs contained more than 100 entries. Culp had noted numerous areas where he thought Poole needed to improve, including Poole's failure to be prepared in a timely fashion, leaving his shift before passing his pager to his replacement,[2] failing to remove his gear from the OCFA unit before leaving for the day, failing to take responsibility for hitting another crew member with a pike pole, failing to perform cleanup duties, and the fact that Poole apparently panicked during a training exercise.

On September 8, 2010, Poole wrote a letter to OCFA requesting the removal of all adverse comments in his "personnel file" located at the station house. Fifteen days later, OCFA responded, stating that "while the notes were intended for personnel purposes, they were never 'entered' into any file" as required by section 3255.

---

[2] A pager is one of the ways a firefighter is alerted an alarm has been sounded.

4

OCFA further stated the notes were not part of Poole's personnel file and to the extent any of the comments in Culp's notes made it into Poole's personnel file via a performance evaluation, Poole had the opportunity to review and sign the evaluation, as well as respond to any adverse comments in the evaluation prior to the evaluation placed in his personnel file.

Poole and the Orange County Professional Firefighters Association filed a petition and verified complaint in the superior court seeking a writ of mandate directing OCFA to include adverse comments in Poole's files only after complying with section 3255, declaratory relief, injunctive relief, civil penalties, and damages. In the trial court, counsel for OCFA and Poole conceded that if Culp had written the evaluation from his memory there would have been no lawsuit.

At the conclusion of the trial, the court entered an order denying relief. The court concluded the daily logs Culp kept in order to aid him in preparing employee evaluations were not part of Poole's personnel file and are not subject to section 3255's requirement that adverse comments not be entered into a personnel file until such time as the firefighter has read and signed the instrument containing the adverse comments. The court analogized Culp's notes to Post-it notes he used to remind himself of something. Poole and the Orange County Professional Firefighters Association filed a notice of appeal (G047691) from the minute order denying relief on the petition for a writ of mandate and the complaint. Once judgment was entered in OCFA's favor, appellants filed a second notice of appeal. The two appeals were consolidated.[3]

---

[3] We dismiss the appeal in G047691 because the minute order denying relief is not an appealable order. There is no need to treat that notice of appeal as premature but valid, because a timely notice of appeal (G047850) was filed after the judgment was entered. (*Vienna v. California Horse Racing Bd.* (1982) 133 Cal.App.3d 387, 389, fn. 2.) Even if the notice of appeal in G047691 were valid, the resolution of the issues in G047850 would render it moot.

5

II

DISCUSSION

The issue presented is whether the daily logs maintained on firefighters and used to prepare evaluations qualify either as a personnel file or a file used for personnel purposes. Poole contends to the extent the notes contained comments adverse to him, he was entitled to review the daily logs in his file and to file a written response to each adverse comment. We conclude the files were used for personnel purposes and are subject to the protective procedures instituted in FFBOR.

*Standard of Review*

"Ordinarily, '[o]n appeal following a trial court's decision on a petition for a writ of mandate, the reviewing court "'need only review the record to determine whether the trial court's findings are supported by substantial evidence.'" [Citation.] However, we review questions of law independently. [Citation.]' (*Alliance for a Better Downtown Millbrae v. Wade* (2003) 108 Cal.App.4th 123, 129.) Where, as here, an appeal involves the application of a statute to undisputed facts, our review is de novo. (*Southern California Edison Co. v. State Board of Equalization* (1972) 7 Cal.3d 652, 659, fn. 8; *Alliance for a Better Downtown Millbrae v. Wade*, *supra*, at p. 129.) Additionally, statutory construction is a question of law requiring our independent review. (*Botello v. Shell Oil Co.* (1991) 229 Cal.App.3d 1130, 1134.)" (*San Joaquin Raptor Rescue Center v. County of Merced* (2013) 216 Cal.App.4th 1167, 1175.) However, to the extent we review the trial court's resolution of disputed facts, we use the deferential evidence standard. (*People v. Gonzales and Solis* (2011) 52 Cal.4th 254, 284.)

6

*FFBOR and Related Legislation*

FFBOR (§ 3250 et seq.) was enacted in 2007, and became effective on January 1, 2008. (Stats. 2007, ch. 591, § 2.) It provides firefighters with certain due process rights concerning their employment. Employers of firefighters must "keep each firefighter's personnel file or a true and correct copy thereof, and shall make the file or copy thereof available within a reasonable period of time after a request therefor by the firefighter." (§ 3256.5, subd. (b).) A firefighter may view his or her "personnel files that are used or have been used to determine that firefighter's qualifications for employment, promotion, additional compensation, or termination or other disciplinary action." (§ 3256.5, subd. (a).) Additionally, "[a] firefighter shall not have any comment adverse to his or her interest entered in his or her personnel file, *or any other file used for any personnel purposes by his or her employer*, without the firefighter having first read and signed the instrument containing the adverse comment indicating he or she is aware of the comment. However, the entry may be made if after reading the instrument the firefighter refuses to sign it. That fact shall be noted on that document, and signed or initialed by the firefighter." (§ 3255, italics added.) When an adverse comment is entered into a firefighter's personnel file, the firefighter has 30 days to file a written response. The written response is then attached to the adverse comment. (§ 3256.) Poole contends the file kept by Culp qualified as a file used for personnel purposes and adverse comments contained in the file were improperly included in violation of sections 3255 and 3256.

FFBOR was intended to mirror the earlier bill of rights enacted to protect police officers, the Public Safety Officers Bill of Rights Act (POBOR). (Sen. Rules Com. Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 220 (2007-2008 Reg. Sess.) as amended July 2, 2007, p. 2.) Section 3305 of POBOR provides: "No public safety officer shall have any comment adverse to his interest entered in his

7

personnel file, or any other file used for any personnel purposes by his employer, without the public safety officer having first read and signed the instrument containing the adverse comment indicating he is aware of such comment, except that such entry may be made if after reading such instrument the public safety officer refuses to sign it.  Should a public safety officer refuse to sign, that fact shall be noted on that document, and signed or initialed by such officer."  Just as section 3256 gives firefighters 30 days in which "to file a written response to any adverse comment entered into his . . . personnel file," section 3306 gives public safety officers the same right.

We also note the Legislature previously granted teachers similar rights. (Stats. 1976, ch. 1010, § 2, operative April 30, 1977.)[4]  Section 44031 of the Education Code provides teachers a right to review their personnel files (Ed. Code, § 44031, subd. (a)) and further provides that no information "of a derogatory nature" may be placed in a teacher's personnel file "until the employee is given an opportunity to review and comment on that information.  The employee shall have the right to enter, and have attached to any derogatory statement, his or her own comments."  (Ed. Code, § 44031, subd. (b)(1).)

*Analysis*

Because FFBOR is of recent origin, it has not been the subject of published appellate court decisions on the issue presented.  As FFBOR mirrors POBOR, we look to prior decisions dealing with comparable provisions of POBOR.  Sections 3305 and 3306 of POBOR were intended to protect peace officers from unfair attacks on their character. Like sections 3255 and 3256 of FFBOR, sections 3305 and 3306 "give[] officers a

---

[4] Education Code section 44031 was repealed and replaced with a similar provision by Statutes 2000, chapter 866, section 1.

8

chance to respond to allegations of wrongdoing." (*County of Riverside v. Superior Court* (2002) 27 Cal.4th 793, 799.)

Complaints by members of the public must be investigated by the law enforcement agency. (Pen. Code, § 832.5, subd. (a)(1).) While these complaints may be kept in an officer's general personnel file, they are often kept in a file separate and apart from the general personnel file of the officer. (Pen. Code, § 832.5, subds. (b), (c).) The courts have found POBOR applies to citizen complaints, even when the complaint is not kept in the officer's personnel file, because the "very purpose" of the investigation requirement of Penal Code section 832.5 is "to assess the [officer's] qualifications for continued employment." (*County of Riverside v. Superior Court*, 27 Cal.4th at p. 803.) Culp's daily logs appear to have the same design, given they are kept for evaluation purposes.

Recognizing the existence of a citizen's complaint in an officer's personnel file may very well adversely affect the officer's employment, the Legislature requires law enforcement agencies to remove from an officer's personnel file any complaint found to be frivolous or unfounded. Still, those complaints must be maintained in a separate file the Legislature also deems to be "personnel records" for purposes of the California Public Records Act and Evidence Code section 1043, the statutory authority for what are commonly called *Pitchess*[5] motions. (Pen. Code, § 832.5, subd. (c);[6] *McMahon v. City of*

---

[5] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

[6] "(c) Complaints by members of the public that are determined by the peace or custodial officer's employing agency to be frivolous, as defined in Section 128.5 of the Code of Civil Procedure, or unfounded or exonerated, or any portion of a complaint that is determined to be frivolous, unfounded, or exonerated, shall not be maintained in that officer's general personnel file. However, *these complaints shall be retained in other, separate files that shall be deemed personnel records* for purposes of the California Public Records Act (Chapter 3.5 (commencing with Section 6250) of Division 7 of Title 1 of the Government Code) and Section 1043 of the Evidence Code." (Pen. Code, § 832.5, subd. (c), italics added.)

*Los Angeles* (2009) 172 Cal.App.4th 1324, 1332-1333.)

In *McMahon v. City of Los Angeles*, *supra*, 172 Cal.App.4th 1324, McMahon, a law enforcement officer with the Los Angeles Police Department, had approximately 20 citizen complaints filed against him. Each was determined to be meritless. Although the department permitted McMahon to review each of the complaints and "various related documents," McMahon demanded to view other materials made in connection with the investigation of the complaints, such as tapes of the interviews conducted during the investigations. When the department refused, McMahon sought a writ of mandate requiring disclosure. (*Id*. at p. 1327.)

Acknowledging the complaints had been found wanting and as a result there were no adverse comments in McMahon's personnel file (*McMahon v. City of Los Angeles*, *supra*, 172 Cal.App.4th at p. 1330) and the police department could not consider unsustained citizen complaints in making personnel decisions (*id.* at p. 1335), the *McMahon* court concluded "it would be unreasonable and contrary to legislative intent to read . . . section 3306.5, subdivision (c), as requiring the Department to disclose internal investigative materials that the Department is not authorized to use in making personnel determinations." (*Ibid*.) Just as the right to inspect personnel files found in POBOR (§ 3306.5) is intended to effectuate the right of law enforcement officers to read and sign an instrument containing an adverse comment prior to placement in his or her personnel file or other file used for personnel purposes by the employer (§ 3305; *McMahon v. City of Los Angeles*, *supra*, 172 Cal.App.4th at p. 1332), section 3256.5 is intended to give firefighters the same rights. Therefore, the general purpose of the provision granting a firefighter the right to review his or her personnel file and to comment on any adverse comment "is to facilitate the [firefighter's] ability to respond to adverse comments potentially affecting the [firefighter's] employment status. [Citation.]" (*McMahon v. City of Los Angeles*, *supra*, 172 Cal.App.4th at p. 1332.)

10

*Aguilar v. Johnson* (1988) 202 Cal.App.3d 241, also involved a citizen complaint filed against a police officer and the officer's right to comment on the complaint. Because a citizen complaint carries a "potential adverse impact on the officer, the complaint is an 'adverse comment' within the meaning of [POBOR]." (*Id*. at p. 250.) The *Aguilar* court discussed the Supreme Court's earlier decision in *Miller v. Chico Unified School Dist.* (1979) 24 Cal.3d 703 (*Miller*). *Miller* involved a school principal who was removed from his administrative position and placed back in a classroom. (*Id*. at p. 706.) Similar to POBOR, Education Code section 44031, originally enacted in 1976 (Stats. 1976, ch. 1010, § 2), gives teachers the right to inspect their personnel files and further provides information of a "derogatory nature" may not be included in an educator's personnel file until such time as he or she is given notice and an opportunity to comment on the information. (Ed. Code, § 44031, subd. (b)(1).) In *Miller*, the Chino Unified School District Board of Education reassigned Miller to a teaching position (*Miller*, *supra*, 24 Cal.3d at p. 706) based on 20 confidential memoranda prepared by Associate Superintendent Don Cloud and submitted to the superintendent. (*Id*. at p. 709.) Miller contended the school district violated Education Code section 44031 by failing to give him notice of the existence of the 20 confidential memoranda. (*Ibid*.)

The Supreme Court agreed and found the school district violated Education Code section 44031 by failing to enter the confidential memoranda into Miller's personnel file, thereby denying him the opportunity to comment on the contents of the memoranda. (*Miller*, *supra*, 24 Cal.3d at p. 711.) The memoranda were prepared by the associate superintendent "'from his personal notes and calendar, a summary of various meetings, contacts, occurrences, and events'" involving Miller. (*Ibid*.) The *Miller* court found substantial evidence supported the trial court's conclusion the memoranda contained derogatory comments concerning Miller. (*Ibid*.) The school district argued Education Code section 44031 did not apply because the memoranda had not been

11

entered into Miller's personnel file. (*Miller*, *supra*, 24 Cal.3d at p. 712.) However, "[t]he Legislature enacted [Education Code] section 44031 in order to minimize the risk of employment decisions that were arbitrary or prejudicial, and to this end established a procedure whereby employees could correct or rebut incomplete or inaccurate information in the hands of their employers which might affect their employment status." (*Id.* at p. 713.) By using the memoranda to affect Miller's employment status without providing him an opportunity to correct inaccurate information contained in the memoranda, the school board violated Education Code section 44031. (*Miller*, *supra*, 24 Cal.3d at p. 714.)

Applying *Miller* to the present facts, it is evident the daily logs affected Poole's job status. The daily logs kept in Poole's file at the fire station were used for personnel decisions. His substandard performance evaluation was admittedly based on adverse comments contained in the daily logs. Like the situation in *Miller*, information *not* contained in Poole's main personnel file was presented to his employer prior an adverse employment action by the employer. As in *Miller*, revealing the contents of the daily logs to Battalion Chief Phillips denied Poole the opportunity to respond to the adverse comments made known to the employer, contrary to the intent of the protective statutory enactment.

The evidence does not provide any reason to believe Poole was provided an opportunity to respond to the oral disclosure Culp made to the battalion chief of adverse comments contained in the file Culp maintained on Poole at the fire station. Indeed, there is no indication Poole was informed of the disclosure, much less of the information disclosed. The purpose in disclosing the contents of the daily logs was personnel related. After all, Culp made the disclosure so Battalion Chief Phillips would be aware of facts affecting Poole's employment.

12

FFBOR's purpose of providing firefighters a right to meaningfully respond to adverse comments that may affect personnel decisions concerning the firefighter (cf. *Sacramento Police Officers Assn. v. Venegas* (2002) 101 Cal.App.4th 916, 926) is frustrated when the firefighter's supervisor maintains a daily log containing adverse comments that may reach as far back as the day after the firefighter's last yearly evaluation and the adverse comments are not revealed to the firefighter until the next yearly review, at which point the firefighter may respond to adverse comments in that review.

Culp kept the logs to help him remember events when preparing personnel evaluations at the end of the year. Poole could not be expected to remember the details of the same events months and months later when he was finally made aware of the adverse comments in the course of a yearly performance review. For example, Culp found fault in Poole's failure to perform certain cleanup duties on a particular occasion. Hypothetically, had Poole agreed with another firefighter to switch cleanup duties on that day it would be unreasonable to expect he would remember the details of the arrangement months later, and be able correct what would otherwise have been an inaccurate or incomplete statement in his yearly performance review.

As stated above, OCFA admits the daily logs were kept for personnel purposes. In addition, the daily logs were used to place Poole on an improvement plan. Because the daily logs on Poole's activities at work and kept in a file with his name on it were used for personnel purposes and were disclosed to superiors—again for personnel purposes—Poole was entitled to respond to adverse comments contained therein. Accordingly, we reverse the judgment of the superior court and remand the matter for further proceedings not inconsistent with this opinion.

13

III

DISPOSITION

The judgment is reversed and the matter remanded for further proceedings consistent with this opinion.  Appellants shall recover their costs on appeal in case No. G047850.


MOORE, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


BEDSWORTH, J.

14